UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MACUHEALTH, LP,

       Plaintiff,

v.                     Case No. 8:22-cv-199-VMC-UAM

VISION ELEMENTS, INC.,

       Defendant.
_____/

## ORDER

This matter comes before the Court upon consideration of Plaintiff MacuHealth LP's request for permanent injunctive relief (Doc. # 146), filed on November 29, 2023. Defendant Vision Elements, Inc. responded on December 27, 2023. (Doc. # 150). MacuHealth filed a reply on January 19, 2024. (Doc. # 153). For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

### A.  Products and the False Advertisement

MacuHealth and Vision Elements sell competing nutritional supplements intended to maintain or improve eye health. (Doc. # 78-5 at 24:13-22, 43:13-44:5); (Doc. # 78-1 at 33:11-19). MacuHealth's product is called "MacuHealth,"

1

while Vision Elements' product is called "Early Defense." (Doc. # 78-5 at 24:13-22); (Doc. # 78-1 at 33:11-19).

Both companies' nutritional supplements contain the same amount of three active ingredients called LMZ carotenoids: lutein, zeaxanthin, and mesozeaxanthin. (Doc. # 78-5 at 24:13-25); (Doc. # 78-1 at 33:22-34:9). The LMZ carotenoids are extracted and derived from marigold flower petals using solvents. (Doc. # 63-5 at 132:2-14). The industry uses hexane, methanol, and acetone as solvents for this process. (Id. at 132:2-5); (Doc. # 78-5 at 18:22-19:3). While the solvents are largely removed from the LMZ carotenoids during the production process, residual amounts remain in the final product. (Doc. # 63-4 at 43); (Doc. # 63-5 at 123:22-124:25).

Between January 2021 and November 2022, Vision Elements promoted its supplement "using marketing materials that stated it is free from, made without the use of, or does not contain certain solvents including hexane, methanol and/or acetone." (Doc. # 150-1 at ¶ 7). The Early Defense bottle also stated that the supplement did not contain hexane, methanol, or acetone. (Doc. # 63-2 at 15). This claim was repeated at trade shows, in personal product pitches, and in emails to potential customers. (Doc. # 78-1 at 198:21-199:2); (Doc. # 78-4 at 292-93, 297).

Vision Elements also created the following advertisement comparing its product to "Competitor A":



(Doc. # 78-4 at 299).

Matthew Brannen Hinton, owner and Chief Executive Officer of Vision Elements, acknowledges that he created the Competitor A bottle using a photo of the MacuHealth bottle. (Doc. # 99 at 6); (Doc. # 150-1 at ¶ 2). Frederic Jouhet, MacuHealth's CEO, testified that consumers would recognize the Competitor A bottle as that of MacuHealth. See (Doc. # 78-5 at 44:22-45:3) ("There is a marketing document that shows a Vision Element or Vision Essence bottle side by side with a MacuHealth bottle that has been blurred slightly, but not enough to not convince the doctors what we're discussing.").

3

While Vision Elements was advertising using this claim, the company sold its supplement to fourteen customers or eye care professionals. (Doc. # 150-1 at ¶ 9). Nearly all sales of Early Defense are to eyecare physicians, though 1% are direct to consumers. (Id. at ¶ 6).

Vision Elements ceased publishing these claims in November and December 2022 to avoid further litigation and hired a consultant to change its marketing materials to omit the claim. (Id. at ¶ 10-11); see (Doc. # 66-2 at ¶ 16) ("In an effort to avoid further litigation regarding the Advertisements, Vision Elements has stopped publishing the Advertisements on its website or brochures. The advertisements have been removed from [the] Vision Elements website at https://www.visionelements.com. Bottles of Early Defense for future production lots will have new labels that do not include the Advertisements."). "Since using the New Label [without the claim], every one of the fourteen (14) eye care professionals that previously purchased bottles with the Old Label, [has] run out of Early Defense and repurchased bottles with the New Label several times over, and any new customers purchased bottles with the New Label." (Doc. # 150-1 at ¶ 12).

Mr. Hinton previously testified that his solvent claims were "highly important" to customers choosing an ocular supplement and that the claim that Early Defense uses a "solvent free" extraction process was a way that Vision Elements distinguished the product. (Doc. # 78-1 at 118:6-20); (Id. at 196:23-197:2). Even so, the two doctors MacuHealth identified as those from whom they had lost sales based on the advertisements (Doc. # 150-2 at 14) testified at trial that Vision Elements' claims about using a solvent-free process did not influence their decision to switch from MacuHealth to Early Defense. (Doc. # 150-3 at 189:6-15, 206:19-21). Instead, the doctors switched products for other reasons, including that the two supplements had the same amounts of the LMZ carotenoids and Early Defense was sold at a lower price. (Id. at 187:5-16, 205:14-206:18). Vision Elements now states that it has no intention of republishing the claim, and the company's sales have improved since the claim was removed from its advertising. (Id. at ¶¶ 13-14).

Though Vision Elements has stopped advertising the claim, Mr. Jouhet still receives one to two questions about this topic during trade shows. (Doc. # 146-2 at 189:9-12).

B.   **Procedural History**

MacuHealth initiated this action on January 25, 2022. (Doc. # 1). In its complaint, MacuHealth alleged unfair competition under 15 U.S.C. § 1125(a)(1)(B) (Count I), misleading advertising under Fla. Stat. § 817.41(1) (Count II), unfair competition under Florida common law (Count III), and deceptive and unfair trade practice under Fla. Stat. § 501.201 (Count IV). (Id. at ¶¶ 41-81). As part of its prayer for relief, MacuHealth requested "an injunction ordering Vision Elements to retract the False Advertisements, to publish a corrective statement, and for Vision Elements and all those who are in active concert with them to refrain from publishing false advertisements in the future." (Id. at 14). MacuHealth did not explicitly plead the elements it is required to prove to obtain injunctive relief in its complaint.

In the order on MacuHealth's motion for summary judgment, the Court determined that the evidence demonstrated that there was no dispute of material fact as to the elements of MacuHealth's claims, except as to whether MacuHealth suffered any injury based on Vision Elements' actions. (Doc. # 99 at 24-35). The case proceeded to trial on each claim as to this remaining issue.

At trial, the jury determined that MacuHealth has been, or is likely to be, injured as a result of the false advertising, but that MacuHealth had not suffered any actual monetary damages. (Doc. # 141 at 1). The jury further determined that Vision Elements' conduct was not willful and deliberate, Vision Elements was not unjustly enriched as a result of the false or misleading advertising, and an award of Vision Elements' profits was not necessary to deter future conduct. (Id. at 2). The jury found that Vision Elements did not make a profit from sales made due to the false or misleading advertising. (Id.). Even so, the jury awarded MacuHealth nominal damages in the amount of $5,000.00. (Id.).

Now, MacuHealth moves for permanent injunctive relief. (Doc. # 146). Specifically, MacuHealth seeks a permanent injunction that orders that Vision Elements:

> 1) Refrain from making any claim that its product does not use or does not contain class 2 solvents, hexane, methanol, and/or acetone.
>
> 2) Within ten (10) days of the order, issue the letter attached as Exhibit 1 [to the Motion], to the eye care professionals to whom it has sold or directly promoted its product.
>
> 3) Within ten (10) days of the order, issue a notice of recall to all current and former customers of Vision Elements demanding the return of any bottles of Early Defense which state that the product does not contain class 2 solvents – hexane, methanol, acetone within ten (10) days. All returned bottles

are to be relabeled with a label without the statement that the product does not contain class 2 solvents - hexane, methanol, acetone, before being sold again.

4) Serve a declaration, signed by Mr. Hinton, within thirty (30) days attesting to the satisfaction of items (2) and (3) above, including (i) identification of all eye care professionals to whom Vision Elements sent the letter required by item (2), and (ii) the number of bottles Vision Elements received in response to its recall notice and the names of the eye care professionals from whom it received the bottles.

(Id. at 1-2). Vision Elements has responded to the Motion. (Doc. # 150). MacuHealth has replied. (Doc. # 153). The Motion is ripe for review.

## II.  **Analysis**

MacuHealth argues that it is entitled to permanent injunctive relief based on its Lanham Act, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Florida common law unfair competition claims. (Doc. # 146 at 3). The Court determines that MacuHealth is entitled to a permanent injunction under FDUTPA, the Lanham Act, and Florida common law.

### A.   **Florida Deceptive and Unfair Trade Practices Act**

MacuHealth brought a claim under FDUTPA, asserting that Vision Elements' false advertisements constituted a deceptive act and unfair practice under the statute. (Doc. # 1 at ¶¶

74-81). MacuHealth did not succeed on its claim for damages under FDUTPA, pursuant to Florida Statute § 501.211(2). See (Doc. # 141 at 1) (determining that MacuHealth had not suffered actual monetary damages). However, MacuHealth asserts that it is still entitled to injunctive relief under FDUTPA based on the jury's determination that MacuHealth has been, or is likely to be, injured as a result of Vision Elements' false advertising. (Doc. # 146).

MacuHealth is entitled to injunctive relief under FDUTPA. FDUTPA provides that, "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1). "Accordingly, regardless of whether an aggrieved party can recover 'actual damages' under section 501.211(2), it may obtain injunctive relief under section 501.211(1)." Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc., 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012).

Courts have interpreted this provision as establishing a lower threshold for injunctive relief than that under federal law and other state statutes. In re Mednax Servs., Inc., Customer Data Sec. Breach Litig., No. 21-MD-02994-RAR,

2022 WL 3550045, at *2 (S.D. Fla. Aug. 18, 2022); Gastaldi v. Sunvest Cmtys. USA, LLC, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009). Under FDUTPA, "[t]here is no requirement that a plaintiff show an ongoing practice or irreparable harm, and . . . relief is available regardless of whether an adequate remedy at law also exists." Gastaldi, 637 F. Supp. 2d at 1057. Further, the provision "is broadly worded to authorize declaratory and injunctive relief even if those remedies might not benefit the individual consumers who filed the suit." Davis v. Powertel, Inc., 776 So. 2d 971, 975 (Fla. 1st DCA 2000). As such, "an aggrieved party may pursue a claim for declaratory or injunctive relief under [FDUTPA], even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice." Id.

Vision Elements first argues that MacuHealth is not entitled to injunctive relief under FDUTPA because MacuHealth does not qualify as an "aggrieved" party. (Doc. # 150 at 11-12). "The term 'aggrieved' is not defined in FDUTPA." Ahearn v. Mayo Clinic, 180 So. 3d 165, 171 (Fla. 1st DCA 2015). Because of this, Florida circuit courts have adopted different definitions of "aggrieved." Importantly, several courts have adopted or referenced the definitions of

"aggrieved" in Black's Law Dictionary. The second definition states that "aggrieved" means "([o]f a person) angry or sad on grounds of perceived unfair treatment." Id. at 172 (quoting Aggrieved, Black's Law Dictionary (10th ed. 2014)); see also O'Keefe v. Pick Five Imports, Inc., No. 8:18-cv-1496-MSS-AEP, 2019 WL 13083614, at *10 (M.D. Fla. June 14, 2019). "This definition of 'aggrieved' [is] more expansive than 'damaged' or 'suffered a loss.'" Ahearn, 180 So. 3d at 172. Interpreting this caselaw, the Middle District of Florida has stated that "a plaintiff is 'aggrieved' under FDUTPA when the deceptive conduct alleged has caused a non-speculative injury that has affected the plaintiff beyond a general interest in curbing deceptive or unfair conduct." Superior Consulting Servs., Inc. v. Shaklee Corp., No. 6:16-cv-2001-GAP-GJK, 2017 WL 2834783, at *7 (M.D. Fla. June 30, 2017) (citing Ahearn, 180 So. 3d at 173).

Where a plaintiff is a business entity, and not a person, some courts have instead referred to the first definition of aggrieved in Black's Law Dictionary: "([o]f a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Stewart Agency, Inc. v. Arrigo Enters., Inc., 266 So. 3d 207, 213-14 (Fla. 4th DCA 2019); e.g., Westgate Resorts, Ltd. v.

Reed Hein & Assocs., LLC, No. 6:18-cv-1088-GAP-DCI, 2020 WL
3265972, at *3 (M.D. Fla. Apr. 27, 2020) (noting that "the
plaintiff is 'aggrieved[' when] 'its rights have been, are
being, or will be adversely affected'" (quoting Stewart
Agency, Inc., 266 So. 3d at 214)). This definition "is not
synonymous with the requirement to show entitlement to actual
damages under section 501.211(2), because entities frequently
do not suffer actual damages from unfair and deceptive
practices of competitors." Stewart Agency, Inc., 266 So. 3d
at 214. "Instead, their damages are frequently special or
consequential damages, and thus, not compensable under
section 501.211(2)." Id.

MacuHealth qualifies as an aggrieved party under FDUTPA.
FDUTPA recognizes non-monetary harm, the type of harm that
the jury determined MacuHealth had experienced or was likely
to experience as a result of Vision Element's claims. See Id.
(recognizing that the damages suffered by business entities
are frequently special or consequential, and not actual);
Global Tech Led, LLC v. Hilumz Int'l Corp., No. 2:15-cv-553-
JES-CM, 2017 WL 588669, at *8 n.13 (M.D. Fla. Feb. 14, 2017)
("The FDUTPA allows 'anyone aggrieved by a violation of [the
Act to] bring an action to obtain a declaratory judgment . .
. and to enjoin [the accused],' . . . and Defendants'

12

allegations of commercial and reputational harm show that Defendants may be 'aggrieved.'" (citations omitted)).

Additionally, in contrast to Vision Elements' assertions (Doc. # 150 at 11-12), the harm to MacuHealth caused by the false statements is not speculative. The jury determined that, while MacuHealth had not suffered any actual monetary damages, the company has been, or is likely to be, injured as a result of the false advertising. (Doc. # 141 at 1). This determination establishes that MacuHealth did suffer harm or is sufficiently likely to suffer harm that entitles it to a permanent injunction under FDUTPA. See Fla. Stat. § 501.211(1) (providing that a plaintiff can seek "to enjoin a person who has violated, is violating, or is otherwise likely to violate this part"). Further, the jury's determination was supported by sufficient evidence, such as Mr. Jouhet's testimony that he must field questions about solvent-free production at trade shows. (Doc. # 146-2 at 189:9-12).

Vision Elements further asserts that MacuHealth is not entitled to injunctive relief under FDUTPA because there is no likelihood that the advertisements with the comparisons to MacuHealth based on false information will be republished. (Doc. # 150 at 12-13). "Under Florida law 'an injunction will not be granted where it appears that the acts complained of

13

have already been committed *and there is no showing by the pleadings and proof that there is a reasonably well grounded probability that such course of conduct will continue in the future.'"* Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc., 187 So. 3d 868, 870 (Fla. 3d DCA 2016) (quoting City of Jacksonville v. Wilson, 27 So. 2d 108, 111 (1946)).

Vision Elements has taken several steps to remove the false advertisements, including no longer publishing the advertisements, replacing the supplement's label with one that omitted that false statement, and hiring a consultant to assist with changes to marketing materials about the supplement, "to avoid further advertising disputes." (Doc. # 150 at 3-4); (Doc. # 150-1 at ¶¶ 10-11). However, as MacuHealth highlights, Vision Elements has not issued any corrective advertising. And "[t]he mere voluntary cessation of conduct alleged to be in violation of FDUTPA does not necessarily foreclose [a plaintiff] from pursuing an action for injunctive relief." Off Lease Only, Inc., 187 So. 3d at 870. Importantly, Vision Elements stopped publishing the advertisements in an effort to avoid further litigation. (Doc. # 66-2 at ¶ 16). The Court concludes that there is a reasonable probability that Vision Elements may continue its false advertisements in the future, especially when Mr.

14

Hinton has refused to concede that Vision Elements' product contains the solvents at issue. (Doc. #146-4 at 34:21-25). This demonstrates that Mr. Hinton still believes that the product is solvent-free, as previously advertised and proved false.

In sum, the Court believes that injunctive relief is still warranted despite Vision Elements' efforts to remove the false statements. MacuHealth may continue to suffer harm without corrective advertising and any harm could be increased if Vision Elements decides to republish the statements. Accordingly, MacuHealth is entitled to injunctive relief under FDUTPA.

**B.  <u>Lanham Act</u>**

MacuHealth asserts that it is also entitled to a permanent injunction based on its claim under the Lanham Act for unfair competition, misrepresentation, and false advertising, pursuant to 15 U.S.C. § 1125(a)(1)(B). (Doc. # 1 at 8); (Doc. # 146 at 7). The Court agrees.

The Lanham Act allows courts "to grant injunctions, according to the principles of equity and upon such terms and the court may deem reasonable, . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of [the] title." 15 U.S.C. § 1116(a). "[A] plaintiff who brings an

action pursuant to section 1125(a) is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his or her claim and if the equities involved favor injunctive relief." <u>Neva, Inc. v. Christian Duplications Int'l, Inc.</u>, 743 F. Supp. 1533, 1548 (M.D. Fla. 1990) (citation omitted).

Before a court may grant a permanent injunction under the Lanham Act, a plaintiff seeking a permanent injunction must satisfy the following four-factor test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." <u>Id.</u> The Court will address each factor in turn.

### 1. Irreparable Injury

As to the first factor, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." <u>Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville</u>, 896 F.2d 1283, 1285 (11th Cir. 1990). "[G]rounds for

irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)). Further, the statute provides that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a). "This presumption, it appears, is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." Abbott Lab'ys v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992). Importantly, "[p]roof of falsity [in false advertising cases] is generally . . . sufficient to sustain a finding of irreparable injury when the false statement is made in the context of comparative advertising between the plaintiffs' and defendant's products." N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227 (11th Cir. 2008).

Here, Vision Elements specifically made its false statement in the context of comparative advertising. (Doc. #

78-4 at 299). Additionally, while Vision Elements asserts that MacuHealth's harm is monetary in nature based on Mr. Jouhet's testimony about the decrease in the closing rates, the jury specifically found that MacuHealth had suffered harm, but no monetary damages. See (Doc. # 141 at 1) (finding that "MacuHealth [has] been, or is likely to be, injured as a result of the false advertising," but that MacuHealth did not suffer actual monetary damages). Vision Elements' arguments to the contrary do not sufficiently rebut the presumption of irreparable injury. Accordingly, MacuHealth has established an irreparable injury.

### 2. Inadequate Remedies at Law

MacuHealth also does not have adequate remedies at law for the harms. "[A] remedy at law for . . . reputational damage is ordinarily inadequate, given 'the potential difficulty of proof of plaintiff's damages' and 'the impairment of intangible values.'" Boulan S. Beach Master Ass'n, Inc. v. Think Props., LLC, 617 F. App'x 931, 934 (11th Cir. 2015) (citation omitted).

"The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff . . . is 'irreparable' then the remedy at law (monetary damages) is 'inadequate'." Anhing Corp. v.

18

Thuan Phong Co., CV 13-05167 BRO (MANx), 2015 WL 4517846, at
*23 (C.D. Cal. July 24, 2015) (quoting 4 McCarthy on
Trademarks and Unfair Competition § 30:2 (5th ed.)).

As noted above, MacuHealth's harm cannot be compensated
for through monetary remedies. Therefore, MacuHealth has
established that it has inadequate remedies at law.

### 3. Balance of Hardships

Further, the balance of hardships weighs in favor of
granting an injunction. Vision Elements does not have a
legitimate interest in the false statements. See PBM Prods.,
LLC v. Mead Johnson & Co., 639 F.3d 111, 127 (4th Cir. 2011)
("Mead Johnson 'simply has no equitable interest in
perpetuating the false and misleading claims in the Mailer.'"
(citation omitted)); Homeland Housewares, LLC v. Euro-Pro
Operating LLC, No. CV 14-03954 DDP (MANx), 2014 WL 4187982,
at *5 ("As a general matter, 'there is no harm to a defendant
from an injunction which prevents continuing dissemination of
false statements.'" (citation omitted)); Osmose, Inc. v.
Viance, LLC, 612 F.3d 1298, 1323 (11th Cir. 2010) ("[I]t is
well settled that false commercial speech is not protected by
the First Amendment and may be banned entirely." (quoting
Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 949 (3d Cir.
1993))). Accordingly, Vision Elements will suffer little

19

hardship in being prohibited from making the false claims again. Additionally, "[a] district court has broad powers in equity to direct parties who have engaged in unfair competition to take affirmative steps to eliminate possible consumer confusion," including by issuing corrective statements. Energy Four, Inc. v. Dornier Med. Sys., Inc., 765 F. Supp. 724, 735 (N.D. Ga. 1991).

Further, Vision Elements is unlikely to suffer any hardship from being enjoined from publishing false statements that it has already ceased to publish and allegedly has no intention of publishing again. See (Doc. # 150-1 at ¶¶ 10, 14). Affirmative steps to correct the false advertising are also appropriate to address any consumers who have already been exposed to the false statements. See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc., 700 F. App'x 251, 264 (4th Cir. 2017) ("Requiring HFAC to issue a retraction email, sent to its initial list of recipients, is a reasonably related requirement to ensure that those who received the first email will also receive the retraction email that mitigates the harm the first email caused."). In contrast, MacuHealth has a great interest in not having to counter false statements, particularly those made in comparative advertisements with the company's product. While the Court

20

will further discuss the appropriate scope of the permanent injunction below, the balance of harms weighs in favor of injunctive relief.

### 4. Public Interest

Finally, injunctive relief is in the public interest. "The Eleventh Circuit has explained that []the public interest relevant to the issuance of [an]... injunction is the public's interest in avoiding unnecessary confusion.'" It's a 10, Inc. v. Beauty Elite Grp., Inc., 932 F. Supp. 2d 1325, 1333 (S.D. Fla. 2013) (internal quotation marks omitted) (quoting Angel Flight of Ga. v. Angel Flight Am., Inc., 522 F.3d 1200, 1209 (11th Cir. 2008)). Further, "it is self evident that preventing false or misleading advertising is in the public interest in general." PBM Prods., LLC, 639 F.3d at 127 (citation omitted). As modified, the relief would not interfere with the public's enjoyment of Early Defense nor Vision Elements' ability to compete fairly with MacuHealth.

In sum, injunctive relief is warranted under the Lanham Act.

### C. **Florida Common Law for Unfair Competition**

Because injunctive relief is warranted under the Lanham Act as explained above, it is also warranted under Florida

common law. The legal analysis is the same for violations of the Lanham Act, FDUPTA, and Florida common law for unfair competition. See Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). The Lanham Act and the Florida common law for unfair competition are coextensive, and injunctive relief is therefore appropriate under both. See Am. United Life Ins. Co. v. Am. United Ins. Co., 731 F. Supp. 480, 486 (S.D. Fla. 1990) (holding that the Lanham Act analysis also proved a common law unfair competition claim, entitling plaintiff to injunctive relief under both); see also Nat. Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1332–33 (11th Cir. 2008) ("Since Natural Answers is unable to bring an unfair competition claim under the Lanham Act under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition and trademark infringement must fail as well.").

D.   **Scope of Permanent Injunction**

As noted above, MacuHealth requests injunctive relief composed of four elements. (Doc. # 146 at 1–2).

22

### 1.   Refrain from Making False Statements

The Court determines that the first element, requiring that Vision Elements "[re]frain from making any claim that its product does not use or does not contain class 2 solvents, hexane, methanol, and/or acetone," is warranted. (Id. at 1). The Court acknowledges that Vision Elements has stopped advertising using the false statement and states that it has no intention to republish this statement. (Doc. # 150-1 at ¶¶ 10-11, 14). But Vision Elements only stopped making this claim to avoid further litigation on this issue (Doc. # 66-2 at ¶ 16), a fact that leaves this Court with a reasonable expectation that the false advertising may be resumed in the future. Accordingly, the Court believes that injunctive relief is still appropriate. See Nat'l Ass'n of Bds. of Pharm. V. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1309 (11th Cir. 2011) ("[T]he voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed." (citation omitted)).

### 2.   Issue Corrective Statement

MacuHealth also requests that the Court require that Vision Elements issue the below letter to the eye care

professionals to whom it has sold or directly promoted its product within ten days of this order. (Doc. # 146 at 1). The letter reads:

> Dear Eye-Care-Professional.
>
> My name is Brannen Hinton. I am the Founder and CEO of Vision Elements, a dietary supplement company that sells the carotenoids-based ocular supplement called Early Defense.
>
> For several years, we published advertisements stating that Early Defense was manufactured without the use of any class 2 solvents in the process, and that, consequently, the final product was free from any residual amounts of such class 2 solvents. We published this claim to elevate Early Defense and denigrate our closest competitor, MacuHealth, by suggesting that the MacuHealth product has purity or safety issues.
>
> THESE STATEMENTS WERE LITERALLY FALSE, WE SHOULD HAVE KNOWN THEY WERE FALSE, AND WE HEREBY RETRACT THEM. I APOLOGIZE TO YOU EYE CARE PROFESSIONALS AND TO MACUHEALTH FOR THESE FALSE ADVERTISEMENTS.
>
> Again, we humbly present you with this apology to rectify the wrong done. We will now focus on providing you with accurate information and representations and cease to use deceptive methods of advertising.
>
> My humble apologies,
>
> Brannen Hinton
> Founder and CEO
> Vision Element[s]

(Doc. # 146-1).

"A district court has broad powers in equity to direct parties who have engaged in unfair competition to take

affirmative steps to eliminate possible consumer confusion."
Energy Four, Inc., 765 F. Supp. at 735 (citation omitted).
Using these powers, courts have sometimes ordered corrective
statements or corrective advertising to offset the effects of
the false statements in addition to measures prohibiting
further false statements. See, e.g., Handsome Brook Farm,
LLC, 700 F. App'x at 264 ("[C]ompelling HFAC to issue a
retraction email is reasonably related to the State's
interest in preventing deception of consumers. . . . Merely
refusing to further disseminate the email reduces the speed
by which the false information spreads, but provides no remedy
for those who have already read the email and those who share
the email with others."). While Vision Elements has taken
steps to eliminate the further publication of materials with
the false statement, it has not taken any steps to correct
the advertising that has already reached consumers. Compare
Eastman Chem. Co. v. PlastiPure, Inc., 969 F. Supp. 2d 756,
771 (W.D. Tex. Aug. 30, 2013) (determining that corrective
advertising was not warranted where Defendant "ha[d] already
engaged in significant amounts of corrective advertising, and
it is unclear what additional effect a digital billboard
written by [Plaintiff] and posted on Defendants' website
[would] have"). Accordingly, a corrective statement is

"appropriate to 'remedy lingering confusion caused by' Defendants' past and ongoing deception." Monster Energy Co. v. Vital Pharms., Inc., EDCV 18-1882 JGB (SHKx), 2023 WL 2918724 (C.D. Cal. April 12, 2023) (quoting TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 830 (9th Cir. 2011)).

Further, other courts have ordered more burdensome corrective statements. See, e.g., Merck Eprova AG v. Gnosis S.p.A, 760 F.3d 247, 264-65 (2nd Cir. 2014) (affirming an injunction requiring that Defendants publish corrective advertising on their homepage, the product's sale page, and third-party industry websites and trade magazines where they advertised their product).

Vision Elements raises concerns about the sufficiency with which the request for injunctive relief was pled in the complaint, including that "the Complaint did not propose sending [MacuHealth's] crafted statement to all customers and non-customers who may have been sent marketing materials but never became customers." (Doc. # 150 at 14). However, MacuHealth did include a request for injunctive relief in its prayer for relief and indicated that it would seek to have Vision Elements retract the false statements and issue a corrective statement. (Doc. # 1 at 14). Vision Elements has

provided no caselaw indicating that the language of the corrective statement itself must be included in the complaint. Additionally, other courts have found it appropriate to send corrective statements to the audience that previously received the false statements or advertising. E.g., Handsome Brook Farm, LLC, 700 F. App'x at 264 ("Requiring HFAC to issue a retraction email, sent to its initial list of recipients, is a reasonably related requirement to ensure that those who received the first email will also receive the retraction email that mitigates the harm the first email caused.").

Finally, Vision Elements asserts that the injunctive relief sought by MacuHealth violates Vision Elements' First Amendment rights because the corrective statement is overly broad. (Doc. # 150 at 14). Vision Elements does not specify which aspects of the requested injunction are overly broad. However, it does note that any "such relief must be narrowly tailored to restrain no more than what is reasonably required to protect the interest of the parties." (Id. at 14-15); see Keener v. Convergys Corp., 342 F.3d 1264, 1269 (11th Cir. 2003) ("Injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties."); Bull Motors, L.L.C. v. Brown, 152 So. 3d 32, 36 (Fla. 3d DCA

2014) (reversing and remanding a court order granting a permanent injunction in part because "the injunction mandating [Defendant's] future behavior and specifying the precise language the company must use with all future customers [was] overly broad"). The Court does not believe that mandating a specific corrective statement would violate Vision Elements' First Amendment rights. Indeed, several courts have mandated that defendants issue corrective statements with specified text as part of preliminary or permanent injunctions. E.g., Energy Four, Inc., 765 F. Supp. at 765, app. A; Monster Energy Co., 2023 WL 2918724, at *15, Ex. A.

However, the Court acknowledges that the proposed language includes several statements expressing an opinion on behalf of Mr. Brannen, such as those statements apologizing for the false statements. Therefore, while the Court will direct Vision Elements to issue a corrective statement as part of the permanent injunction, the Court has modified the language to convey only the facts. This approach makes the statement more similar to those issued in other cases. E.g., Energy Four, Inc., 765 F. Supp. at 765, app. A (directing issuance of a corrective statement at the preliminary injunction stage that provides a factual summary of the case

and the reasons for issuing the notice); Monster Energy Co., 2023 WL 2918724, at *15, Ex. A (directing that Defendant issue a corrective statement summarizing the case, the jury verdict, and the permanent injunction).

The Court mandates that Vision Elements issue the following corrective statement to the eye care professionals to whom it has sold or directly promoted its product within ten days of the order:

> Subject: Corrective Statement Relating to Vision Elements' Advertising
>
> Dear Eye Care Professional,
>
> Vision Elements is a dietary supplement company that sells the carotenoids-based ocular supplement called Early Defense. In January 2022, MacuHealth, LP filed a civil suit against Vision Elements, Inc. alleging false and misleading advertising.
>
> In August 2024, the United States District Court for the Middle District of Florida issued a permanent injunction enjoining Vision Elements, Inc. from making any claim that Early Defense does not use or does not contain class 2 solvents, hexane, methanol, and/or acetone on the basis that this claim is false.
>
> Our records indicate that, between January 2021 and November 2022, you received advertisements that contained this claim.
>
> Vision Elements retracts this claim. The company's packaging and advertisements have been modified to reflect this ruling.

### 3.    Product Recall

Next, the Court does not believe that a recall of "any bottles of Early Defense which state that the product does not contain class 2 solvents – hexane, methanol, acetone within ten (10) days" is warranted. See (doc. # 146 at 2) (requesting this relief). Importantly, Vision Elements has provided an affidavit from Mr. Hinton stating that "[s]ince using the New Label [without the false statements], every one of the fourteen (14) eye care professionals that previously purchased bottles with the Old Label, [has] run out of Early Defense and repurchased bottles with the New Label several times over, and any new customers purchased bottles with the New Label." (Doc. # 150-1 at ¶ 12). Therefore, a recall would not result in the collection of any bottles of Early Defense that contain the false statement and no recall is warranted. Because the Court determines that a recall is not warranted, the Court will not address Vision Elements' concerns regarding whether MacuHealth's request for a recall was sufficiently pled. (Doc. # 150 at 14).

### 4.    Declaration of Compliance

Based on the prior requests, the Court determines that it is appropriate to direct Vision Elements to serve a sworn declaration, signed by Mr. Hinton, upon MacuHealth and the

30

Court within thirty (30) days of this order attesting that it has issued the corrective statement and identifying the eye care professionals to whom Vision Elements sent the statement. The Lanham Act provides that "[a]ny [] injunction [issued pursuant to the Act] may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." 15 U.S.C. § 1116(a). The Court determines that a declaration is appropriate to verify Vision Elements' compliance with the terms of the permanent injunction.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff MacuHealth, LP's Request for Permanent Injunctive Relief (Doc. # 146) is **GRANTED** in part and **DENIED** in part.

(2) Vision Elements is directed to:

a. Refrain from making any claim that its product does not use or does not contain class 2 solvents, hexane, methanol, and/or acetone.

     b.   Within ten (10) days of the Order, issue the above letter to the eye care professionals to whom it has sold or directly promoted its product.

     c.   Serve a sworn declaration, signed by Mr. Hinton, within thirty (30) days of the Order attesting to the satisfaction of item (b) above, including identification of all eye care professionals to whom Vision Elements sent the letter required by item (b).

(3)  The Clerk is directed to terminate any pending deadlines and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u> day of August, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE